**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ETHEL KEMP, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-cv-1572 (TSC) |
| ) | |
| DERRICK K. EILAND, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Ethel Kemp alleges a decade-long scheme by Defendant Derrick Eiland to fraudulently transfer ownership in property from Kemp to himself.  Kemp filed suit against Eiland and the holder[1] of a mortgage on the subject property to quiet title to the property, and otherwise obtain monetary and equitable relief against the Defendants.  The Bank Defendants moved to dismiss the Complaint for failure to state a claim.  Eiland answered the Complaint and subsequently moved to dismiss for failure to state a claim or, in the alternative, for pre-discovery summary judgment.  Kemp opposed the motions and cross-moved for discovery pursuant to FED. R. CIV. P. 56(d).  For the reasons set forth below, Defendants' motions are granted in part and denied in part.  Plaintiff's cross-motion for discovery is denied.  Plaintiff's motion for leave to file an amended complaint is denied without prejudice for failure to comply with the Local Rules.[2]  Plaintiff may refile the motion in accordance with the Local Rules within ten (10) days from the issuance of this Opinion.

---

[1] And its predecessors-in-interest, collectively the "Bank Defendants."

[2] At several points in her opposition to Eiland's motion, Plaintiff sought leave to file an amended complaint. (Kemp S.J. Opp'n at 2, 20, 26 n.55).  Plaintiff's proposed orders do not address leave to file an amended complaint

## I.   BACKGROUND[3]

The 81-year old Plaintiff, Ethel Kemp, lives at 1637 V Street NW Washington, D.C. (the "Property").   (Compl. ¶¶ 17–18).   Mrs. Kemp and her late husband Roger Kemp purchased the Property in 1979.   (*Id.* ¶ 17).   In or around 2001, the Kemps began falling behind on their mortgage payments, and as a result, faced foreclosure.   (*Id.* ¶¶ 19-20).   Defendant Eiland approached the Kemps and offered to help them save their home.   (*Id.* ¶¶ 20–21).   The Kemps agreed to work with Eiland because "they believed he was helping them keep their long-time home."   (*Id.* ¶ 22).

The Kemps signed a document entitled a "Declaration of Trust and Land Agreement" (the "Declaration of Trust") on February 8, 2001.   (*Id.* ¶ 23).   That document, written by Mr. Eiland and his former co-defendant, Denise Cowley, purported to transfer title of the Property to the newly created "1637 V. St. Land Trust".   (*Id.* ¶¶ 24, 26, 28, 31).   The Declaration of Trust did not contain any explicit language identifying any beneficiary of the Trust.   (*Id.* ¶ 32). Plaintiff alleges that the Declaration of Trust "lacks explicit language stating that the Kemps intended to create a trust or that the Kemps intended to place title of their home into the Trust once created."   (*Id.* ¶ 27).   Plaintiff also points out that the Kemps' names "are not identified in the Declaration of Trust other than by the appearance of their signatures on the next-to-last page

---

(Proposed Orders, ECF Nos. 19-4, 19-5) and Plaintiff did not attach a proposed amended complaint to her Opposition. *See* FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion."); D.D.C. L. Civ. R. 7(c) ("Each motion and opposition shall be accompanied by a proposed order"); *Id.* R. 7(i) ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended"); *Id.*, R. 15.1 (same). It is within the court's discretion to deny a request made in this procedurally deficient manner. *Benoit v. U.S. Dep't of Agriculture*, 608 F.3d 17, 21 (D.C. Cir. 2010).

[3] At this stage of the litigation the court assumes the truth of the allegations of the Complaint and sets forth those allegations in this section.   The court does not address Eiland's additional factual contentions set forth in his FED. R. CIV. P. 56 statement of undisputed material facts.

of the document, above the words '____% Beneficiary,'" which is left blank.  (*Id.* ¶ 33).  The Declaration of Trust was recorded two years after it was signed.  (*Id.* ¶¶ 36–37).  In addition to the Declaration of Trust, the Kemps signed a Warranty Deed (the "2001 Deed"), which purported to transfer the Property to the Trust.  (*Id.* ¶ 38).  Like the Declaration of Trust, it was recorded two years after it was signed.  (*Id.* ¶ 40).

The Complaint references no other documents signed on February 8, 2001.  Eiland's motion for summary judgment identifies additional documents signed on that date, which Kemp's subsequent filings acknowledge.  (Pl. Summ. J. Opp'n at 12).  But because, as is discussed below, the Court denies Eiland's motion for summary judgment as premature, and these documents are not "documents upon which the plaintiff's complaint necessarily relies," the Court does not look to them in its evaluation of the Defendants' motions to dismiss.  *Bullock v. Donohoe* 71 F. Supp. 3d 31, 34 (D.D.C. 2014).[4]

Sometime in 2007, Eiland and Cowley created and executed a new Deed (the "2007 Deed"), purporting to transfer title of the Property from the Trust to "Derrick Eiland, sole owner."  (Compl. ¶ 41).  Eiland executed the 2007 Deed as "Substitute Trustee" of the Trust, even though the Declaration of Trust neither names a substitute trustee nor conveys authority on the trustees to appoint a substitute, and no appointment of a substitute trustee was filed among

---

[4] On a motion to dismiss, the court is ordinarily limited to considering only matters contained within the four corners of the complaint or integrated into that complaint.  *See infra* Section II.A.  The court may also consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks and citations omitted); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("It is also clear that these documents – which were appended to Myers' motion to dismiss and whose authenticity is not disputed – may be considered here because they are referred to in the complaint and are integral to Kaempe's conversion claim."); *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.") (citations and internal quotation marks omitted).  The various other agreements listed by Eiland in his motion are not documents on which the Complaint relies, nor are they mentioned in or incorporated into the Complaint.

the land records.  (*Id.* ¶¶ 42–45).  The 2007 Deed was executed in the District of Columbia but

notarized by a Maryland notary public.  (*Id.* ¶¶ 25, 39, 47).  It was subsequently recorded in the

land records.  (*Id.* ¶ 46).  On or about November 19, 2007, Eiland obtained a $300,000 mortgage

from Defendant World Savings Bank ("WSB") secured by the Property pursuant to a Deed of

Trust ("2007 Deed of Trust").[5]  (*Id.* ¶¶ 48–50).

Plaintiff asserts that "Eiland used the 2007 Deed and Deed of Trust to strip the equity in

the Kemps' home for his own benefit or for the benefit of himself and Defendant Cowley."  (*Id.*

¶ 51).  Additionally, Eiland instructed the Kemps to make direct payments to him instead of their

lenders.  (*Id.* ¶ 53).  The Kemps complied with that request until June 2014, making monthly

payments of $941, which Plaintiff "believed . . . were going toward her mortgage."  (*Id.* ¶¶ 54–

55).  Altogether, Eiland is alleged to have received at least $135,000 from Plaintiff since 2001.

(*Id.* ¶ 56).  Finally, "[i]n May 2014, Defendant Eiland threatened to 'evict' Mrs. Kemp from her

home for 'nonpayment of rent.'"  (*Id.* ¶ 58).

On June 30, 2014 Plaintiff filed suit in the Superior Court for the District of Columbia

against Defendants Eiland and Cowley, as well as Defendants Wells Fargo & Company

("WFC"), Wachovia Corporation, and WSB (collectively, the "Bank Defendants").   The

Complaint contains five claims: Count I (against all Defendants), seeks to quiet title to the

Property by setting aside all deeds and deeds of trust on the grounds that the documents involved

were either facially deficient, void, voidable, fraudulently induced, or otherwise unconscionable

(*Id.* ¶¶ 59–77); Count II (against Eiland), alleges a breach of the fiduciary duty of loyalty (*Id.* ¶¶

---

[5] World Savings Bank was acquired by Wachovia Bank in October 2006, which was subsequently acquired by
Wells Fargo & Company in or about 2008.  Accordingly, "Wells Fargo & Company is the successor-in-interest to
certain World Savings Bank mortgages, including in that capacity, as the beneficiary of a 2007 Deed of Trust on the
Subject Property."  (Compl. ¶ 15).

78–84); Count III (against all Defendants), seeks injunctive relief prohibiting "any further conveyance, encumbrance, or other transactions involving her home, including any eviction proceeding to evict Mrs. Kemp from her home" (*Id.* ¶¶ 85–86); Count IV (against Eiland), alleges unjust enrichment (*Id.* ¶¶ 87–94); and Count V (against all Defendants), alleges slander of title (*Id.* ¶¶ 95–109).

On September 16, 2014, the Bank Defendants removed the case to this court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction. Eiland filed an answer on September 23, 2014, and on the same day, both the Bank Defendants and Cowley filed motions to dismiss.[6]

On February 6, 2015, Eiland filed his own motion to dismiss, or, in the alternative, for summary judgment. Plaintiff opposed the motion and countered with a motion to permit discovery pursuant to Rule 56(d).

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

A motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is plausible when the factual content allows the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be

---

[6] Plaintiff ultimately stipulated to dismissal of all claims against Cowley.

enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citation omitted). Evaluating a 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The reviewing court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### B. Motion for Summary Judgment

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, at 249.

Summary judgment is often inappropriate when the parties have not yet engaged in discovery. The D.C. Circuit has repeatedly cautioned that "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (citing *Liberty Lobby, Inc.,* 477 U.S. at 257); *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) ("As we have stated before, summary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'") (citing *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375, 1380 (D.C. Cir. 1988)); *see also Celotex Corp.,* 477 U.S. at 322 (summary judgment appropriate only "after adequate time for discovery").[7]

## III.    ANALYSIS

### A.  Summary Judgment

Eiland moves for summary judgment largely on the basis of: (1) documents disclosed in his Motion, purporting to reflect agreements between Eiland and the Kemps, Eiland and the

---

[7] In opposing summary judgment, a non-moving party may make a motion under Rule 56(d), which provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). It is within the court's discretion to permit or deny discovery before ruling on a summary judgment motion. *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 612 (D.C. Cir. 2010). Relief under Rule 56(d) is appropriate when the movant "concretely and with sufficient particularity" identifies "the additional discovery she would seek." *Harrison v. Office of Architect of Capitol*, 281 F.R.D. 49, 51 (D.D.C. 2012). The party must also "articulate a plan for obtaining the discovery alleged to be unavailable . . . establish that the discovery she seeks is essential to justify her opposition," and make this showing by affidavit and declaration. *Id.* at 51-52.

Trust, and Eiland and the Bank Defendants; and (2) his sworn declaration, attached as an exhibit

to his Motion.  Normally, at the summary judgment stage, Eiland's reliance on these documents

would not be improper: it does appear that the text of the documents, which purportedly bear

Plaintiff's signature, may provide a defense to her allegations.  *See, e.g.*, *Hughes v. Abell*, 867 F.

Supp. 2d 76, 94-95 (D.D.C. 2012) (holding that documents of undisputed authenticity

unambiguously demonstrated transfer of property).

      However, at this stage of the litigation, a summary judgment motion is premature.  As

noted above, summary judgment is normally appropriate only after the parties have had an

opportunity to engage in discovery.  *See Convertino*, 684 F.3d at 99.  When a party moves for

pre-discovery summary judgment, it "bears the heavy burden of establishing that the merits of

his case are so clear that expedited action is justified."  *Taxpayers Watchdog, Inc. v. Stanley*, 819

F.2d 294, 297 (D.C. Cir. 1987).  Eiland does not meet this heavy burden.  Kemp has alleged that

she was fundamentally misled about the effect of the various agreements, and implies—although

does not explicitly assert—that the authenticity of the documents upon which Eiland relies is

unsettled.[8]  Proof of these allegations necessarily goes beyond the text of the transaction

documents and requires discovery into what, if any, representations Eiland made to Kemp and

any other circumstances indicating that the text of the documents should not control.  *See, e.g.*,

*Barrer v. Women's Nat'l Bank*, 761 F.2d 752, 758-60 (D.C. Cir. 1985) (describing the fact-

intensive inquiry under D.C. law into whether even innocent misrepresentations can be the basis

for rescission of a contract).  Indeed, even in *Hughes*, the court considered deposition testimony

---

[8] For example, Kemp implies that the handwritten document purporting to state that Kemp understood she was *selling* her home may have been written by someone other than her, *see* Pl. S.J. Opp'n at 12. In *Hughes v. Abell*, 867 F. Supp. 2d 76 (D.D.C. 2012), which granted summary judgment against a plaintiff similarly situated to Kemp, the court found it significant that the plaintiff had "handwritten and signed" a "note describing the transaction in detail." *Id.* at 94-95.

by the homeowner that he did not understand the transactions, but ultimately concluded that this testimony was not credible "in light of the written documents in the record," which were "extremely clear." *Hughes*, 867 F. Supp. 2d at 94.  Where a plaintiff has not had the opportunity to adduce evidence relating to the circumstances under which the documents were created, summary judgment must be denied without prejudice.  Because Defendant's motion for summary judgment is denied, the court also denies the Plaintiff's FED. R. CIV. P 56(d) motion for discovery as moot.

The Court now proceeds to address whether Counts I through V state claims for relief under Rule 12(b)(6).

### B.  Count I – Quiet Title (All Defendants)

"It is well established that courts may hear a common law action to quiet title in order to prove title, secure title, or to remove obstacles which hinder its enjoyment." *Jessup v. Progressive Funding*, 35 F. Supp. 3d 25, 34 (D.D.C. 2014) (quoting *In re Tyree,* 493 A.2d 314, 317 (D.C.1985)).  "In a quiet title action, the plaintiff asks the court to declare that he or she has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it."  65 Am. Jur. 2d Quieting Title § 1.  In these actions, "'the Plaintiff has the burden of showing a title or right superior to that of the defendant as a prima facie case,' which means that 'the plaintiff [must] at least prove a title better than that of the defendant, which, if not overcome by the defendant, is sufficient.'" *Jessup*, 35 F. Supp. 3d at 36 (quoting 74 C.J.S. Quieting Title § 77 (2014)).  "If the defendant has established the due execution of an instrument, the burden is again cast on the plaintiff to show facts in avoidance."  74 C.J.S. Quieting Title § 77 (2014).

The court notes at the outset that Defendants place great reliance on *Jessup v. Progressive Funding*.  But, Plaintiff points out, that case differed from this one in several

respects.  "Jessup's complaint contains no allegation that she has superior title to the property, let alone any facts that would support such an allegation."  *Id.*, 35 F. Supp. 3d at 36.  Jessup also did not allege "facts showing that this conveyance was invalid in the first instance," whereas here, Plaintiff alleges that the conveyance was invalid due to facial deficiencies in the trust instrument, unauthorized actions under the trust, self-dealing, fraudulent inducement, and unconscionability.  *Id*.  Further, there were no allegations in *Jessup*, as there are here, that due to deceit, the Plaintiff unknowingly and unintentionally entered into a transaction which clouded the title to her property.  Allegations of deception suffice to state a claim to quiet title.  *Lancaster v. Fox*, 72 F. Supp. 3d 319, 322 (D.D.C. 2014) ("were [plaintiff] successful in proving his fraud allegations . . . he could clear the title to the property of any cloud created by the contested deeds"); *see also* 65 Am. Jur. 2d Quieting Title § 21 ("a title or lien that has been procured by fraud, deceit, or misrepresentation casts upon the property a cloud that may be removed by a suit to quiet title" (citing *Graves v. Ashburn*, 215 U.S. 331 (1909))).[9]

Eiland[10] and Kemp also devote substantial resources arguing whether the irregularities Plaintiff has identified suffice to justify an order quieting title in Kemp's favor.  As Eiland reads the Complaint, Plaintiff alleges that:

---

[9] To the extent the Bank Defendants argue that this claim lies only against Eiland, that argument is not persuasive. "Parties who should be joined as defendants in such an action [to quiet title] thus include all those who appear of record to have a possible claim or interest in the property or all those who may have a substantial interest in the property and who will be materially affected by the decree."  65 Am. Jur 2d Quieting Title § 63.  This class includes the Bank Defendants.

[10] The Bank Defendants make their arguments against this Count with a greater degree of generality.  They argue that this claim must be dismissed because "Kemp fails to plead any facts demonstrating that she has superior title to the Property."  (Bank Mot. at 6).  According to the Bank Defendants, Plaintiff has pled two sets of facts which demonstrate the contrary—that she *lacked* free and clear title to the property because she defaulted on her mortgage (*Id.* (citing Compl. ¶ 2)), and she signed the 2001 Declaration of Trust and 2001 Deed transferring title to the Trust, both of which were recorded. (*Id.* (citing Compl. ¶¶ 22, 38)).  Because the specificity with which Eiland addresses this claim would apply to the Bank Defendants equally, the court will not separately address the Bank Defendants' contentions, except to note that, to the extent the Bank Defendants argue that this claim lies only against Eiland, that argument is not persuasive.

> she is entitled to an order quieting title for five reasons: deficiencies in the 2001 Declaration of Trust and the 2001 Deed, Compl., at ¶¶ [sic]; Eiland's 'unauthorized acts' void the 2007 transaction, Compl., at ¶¶ 62-64; self-dealing in the 2007 transaction, Compl.,  ¶¶ 64-70; fraudulent inducement, Compl., at ¶¶ 71-73; and unconscionability.  Compl., at ¶¶ 74-76.

Eiland Mot. at 27 (footnote omitted).  Eiland argues that none of these grounds can void the documents purporting to transfer the Property.  Kemp responds that these are not stand-alone claims, but rather "reasons why this Court, *in equity*, should quiet title in Mrs. Kemp's favor." (Kemp Summ. J. Opp'n at 14 (emphasis in original)).  Kemp also correctly notes that "[i]n the District of Columbia, an action to quiet title may not be dismissed for failure to state a claim when the complaint alleges, as appellants' complaint does, that the plaintiffs are the owners of the land in fee simple." *In re Tyree*, 493 A.2d at 317.  However, to properly allege superior title, Kemp must proffer facts supporting that assertion, meaning she must allege a basis for finding as void the documents which she argues cloud her title.  The court must, accordingly, analyze the extent to which she has alleged such a basis, and does so below by evaluating each theory for quieting title. *See, e.g.*, *Diaby v. Bierman*, 795 F. Supp. 2d 108, 112 (D.D.C. 2011) (dismissing quiet title complaint when plaintiff's allegations that defendants lacked standing to foreclose on his property were unsupported by the law).  The court also notes that other cases in this District have noted that "it is premature to consider dismissal of [a quiet title count], which may or may not constitute an appropriate remedy depending on the evidence yet to be adduced in this case." *Hughes v. Abell*, 867 F. Supp. 2d at 90 (*citing Armenian Genocide Museum and Mem'l, Inc. v. Cafesjian Family Found., Inc.*, 595 F.Supp.2d 110, 119 (D.D.C.2009)).

As discussed below, the court finds that Kemp's allegations provide a sufficient basis on which to challenge the documents that she alleges cloud her title.  Defendants' motion to dismiss as to Count I is therefore denied.

### i.  Invalidity of the 2001 Trust and Deed

The District of Columbia has adopted the Uniform Trust Code, which requires a "definite beneficiary" in order to create a trust.  D.C. Code § 19-1304.02(a)(3); *see also In re D.M.B.*, 979 A.2d 15, 21 (D.C. 2009).  A beneficiary is definite "if the beneficiary can be ascertained now or in the future."  D.C. Code § 19-1304.02(b).  Kemp alleges that the Trust is "facially deficient" due to a failure "to specifically name the Kemps (or anyone else) as beneficiaries and the failure to include language demonstrating the intent of the Kemps to create a trust and to transfer title of their home into the Trust."  (Compl. ¶ 60).

Eiland responds that because the beneficiary could be ascertained in the future, the Trust is not defective on its face.  However, this argument misconstrues the meaning of 1304.02(a)(3), which:

> is simply a codification of the common-law rule of the Restatement (Second) of Trusts § 112, which states that a trust is not created unless there is a beneficiary who is definitely ascertained at the time of the creation of the trust or definitely ascertainable within the period of the rule against perpetuities.

*Newman v. Liebig*, 282 Neb. 609, 613-14 (2011) (interpreting Nebraska's codification of the Uniform Trust Code); *see* D.C. Code § 19-1301.06 ("The common law of trusts and principles of equity supplement" the Uniform Trust Code.).  The Restatement (Second) of Trusts § 112 comments provide that a beneficiary "must be either (1) specifically named; or (2) capable of ascertainment from facts existing at the time of the creation of the trust; or (3) capable of ascertainment from facts which although not existing at the time must necessarily be in existence at some time within the period of the rule against perpetuities."  Restatement (Second) of Trusts § 112 comment a.  While a beneficiary can be "designated by description," *id.* at comment c, the thrust of this rule is that the trust instrument itself must designate some manner of identifying the beneficiary.  The trust at issue in *Newman* failed because the "beneficiary must be ascertainable

12

*from the trust instrument*" and "no beneficiary [was] designated *by the trust instrument*."
*Newman,* 282 Neb., at 614 (emphasis in original).

The Declaration of Trust in this case (attached as Ex. 10B to Eiland Mot.), does not
identify the Kemps, or any other party, as beneficiaries of the Trust.  However, the Kemps did
sign above two lines line stating "__% Beneficiary."  The Declaration of Trust also does not
confer power on the Trustee to nominate a beneficiary from a broadly defined class.  Thus the
identity of any beneficiary in the Declaration of Trust is unsettled or missing entirely, and
therefore Plaintiff raises "a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.

Eiland maintains that, in any event, a defect in the trust agreement does not "vest title in
the grantor" but instead the "transferee takes title free of trust."  (Eiland Mot. at 28 n.11 (citing
Restatement (Third) of Trusts § 8 comment f)).  This again misreads the law, which provides that
*if* "the transferor received from the transferee consideration for the transfer as an agreed
exchange," the transferee holds the title free of trust.  Restatement (Third) of Trusts § 8 comment
f.  Here, the Declaration of Trust does not state that the Trustee paid any consideration.  Eiland's
argument is therefore inapplicable.

### ii.  Invalidity of the 2007 conveyances

Kemp next alleges that the 2007 Deed and Deed of Trust are void because: (1) Eiland had
no actual or apparent authority to sign the 2007 Deed; (2) the Bank Defendants had actual notice
that Eiland had no legal interest in the property; and (3) even if the Bank Defendants lacked
actual notice, they had inquiry notice that Eiland lacked a legal interest in the property.  (Compl.
¶¶ 62-64).  Eiland responds that "[w]hether this contention arises out of the claim that the trust is
defective, or the claim that the trust lacks provisions for substitution of a trustee, the contention
is . . . belied by the language of the" 2001 Declaration of Trust.  (Eiland Mot. at 28-29).  Eiland

also contends that if the 2001 documents are valid, then Kemp lacks standing to challenge the validity of the 2007 documents.

As noted above, Plaintiff has pled sufficient facts to challenge validity of the Declaration of Trust. The invalidity of the Declaration of Trust raises a facially plausible claim as to the validity of the 2007 conveyances, since the validity of any 2007 land transaction rests on Eiland holding clear title in 2001.

### iii.   Self-Dealing in the 2007 conveyances

Kemp also alleges that the 2007 Deed and Deed of Trust are void because "even if the Subject Property was properly transferred into the Trust and Defendant Eiland did have authority to act as a substitute trustee, he breached the duty of loyalty he owed the Kemps by failing to administer the Trust solely in the interest of the Kemps as putative beneficiaries." (Compl. ¶ 65).[11]

A Plaintiff is allowed, under FED. R. CIV. P. 8(d), to plead inconsistent claims. Thus, Kemp may allege both a claim that Eiland lacks title, as well as a claim that even if title was properly transferred, the transfer should be void for self-dealing. The Complaint alleges that the Property was transferred into the 1637 V St. Land Trust, with former defendant Cowley listed as trustee. (Compl. ¶¶ 26, 28). Plaintiff further alleges that Eiland executed the 2007 Deed as "Substitute Trustee for the 1637 V Street Land Trust." (*Id.* ¶ 42). Eiland does not deny that he executed the 2007 Deed as substitute trustee, but rather argues that because the Plaintiff does not allege that the Kemps were beneficiaries of the trust at any time when Eiland was a trustee, her claim for breach of fiduciary duty must fail.

---

[11] Eiland, in his motion to dismiss, asks the court to reference a prior section of his brief for his argument as to why the self-dealing claim fails, but the section referred to deals with the statute of limitations of the slander of title count. Despite this apparent error, the Court will assume that Eiland meant to refer to his discussion of Count II, Breach of Fiduciary Duty.

As an initial matter, the fact-intensive nature of fiduciary relationships alone counsels that discovery is needed before the court rules on a dispositive motion on this claim.  *See Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 248-49 (D.D.C. 2013) (internal citations omitted) ("[w]hether a fiduciary relationship exists is a fact-intensive question, and the fact-finder must consider 'the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties.").  Second—and contrary to Eiland's assertion in his motion to dismiss—the Plaintiff does state that she and her husband's signatures are above the words "____% Beneficiary" in the Declaration of Trust.  This fact, taken in the light most favorable to the Plaintiff, raises an inference that the Kemps may have been the intended Trust beneficiaries.  (Compl. ¶ 33).  If so, (1) Eiland, as substitute trustee, owed a fiduciary duty to the Kemps (*Id*. ¶ 80); (2) Eiland breached that duty by executing the 2007 agreements for his benefit (*Id*. ¶¶ 81, 82); and (3) Plaintiff suffered damages from the alleged equity-stripping scheme and the threat of eviction (*Id*. ¶ 83).  Thus, the court finds that there are plausible and sufficient claims raised as to Eiland's fiduciary relationship with Kemp, and a subsequent breach of Eiland's duty of loyalty.

### iv.  Fraudulent Inducement

Plaintiff alleges that the 2001 Deed and Declaration of Trust, and 2007 Deed and Deed of Trust should also be void "because the Kemps were fraudulently induced to enter into any transactions with . . . Eiland . . . by virtue of his misrepresentation, or misrepresentation by omission, that he would save their home," and that "[a]ny action the Kemps took vis-à-vis transferring title of their home to the Trust were in reasonable reliance upon Defendant Eiland's misrepresentation, or misrepresentation by omission."  (Compl. ¶¶ 71-72).

Eiland argues that Plaintiff's argument fails for the same reason her unjust enrichment claim fails.  As set forth in Count II below, because Plaintiff has pled sufficient facts of common

law fraud and particularized facts under FED. R. CIV. P. 9(b) to survive a motion to dismiss,
Plaintiff's fraudulent inducement claim in Count I also survives.

### v. Unconscionability

Lastly, Plaintiff alleges that the 2001 Declaration of Trust and the 2001 and 2007 Deeds
should be void because of Eiland's unconscionable scheme that "creat[ed] a transaction that
would not benefit the Kemps or which conferred benefits to Mrs. Kemp of a grossly lesser value
than the value the Kemps conveyed to Defendants." (Compl. ¶ 76).

Eiland responds that first, common law unconscionability is a defense and cannot be
pleaded as an affirmative cause of action. Second, even if unconscionability could be an
affirmative basis for a quiet title claim, Plaintiff does not satisfy the elements of an
unconscionability claim, which requires: (1) an absence of meaningful choice for one of the
parties and (2) unreasonable contract terms.

"Liability for common law unconscionability requires two findings: 'an absence of
meaningful choice on the part of one of the parties together with contract terms which are
unreasonably favorable to the other party.'" *Williams v. First Gov't Mortg. & Investors Corp.*,
225 F.3d 738, 748 (D.C. Cir. 2000) (internal citations omitted). Additionally, "claims of
unconscionability, bad faith and unfair dealing require the existence of a contractual relationship
between the parties." *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 147 (D.D.C. 2013),
*appeal dismissed*, No. 13-7065, 2013 WL 3357830 (D.C. Cir. June 13, 2013) (internal citations
omitted).

The parties acknowledge a split in case law within this District over whether common
law unconscionability may be used affirmatively.[12] The court need not address this split,

---

[12] For differing perspectives on the issue, *see generally Johnson v. Long Beach Mortgage Loan Trust 42001-4*, 451
F. Supp. 2d 16, 35-37 (D.D.C. 2006); *Young v. 1st Am. Fin. Servs.*, 977 F. Supp. 38, 41 (D.D.C. 1997); *Ali v. Mid-*

however, because it finds that Plaintiff has failed to plead the elements of common law unconscionability.

Eiland correctly notes that the Complaint does not plead the absence of meaningful choice.  Plaintiff's only assertions with regard to unconscionability are that: (1) "as a result of the scheme orchestrated by Defendant[] . . . Mrs. Kemp lost title to her home and the accumulated equity in the property, yet she has also paid more than $135,000 to Defendant Eiland since 2001;" (2) Eiland obtained title and provided little or no consideration; and (3) the scheme that Eiland created conferred benefits on the Plaintiff of a grossly lesser value than those conferred on Defendant.  (Compl. ¶¶ 74-76).  These assertions, along with the other factual allegations contained in the Complaint, allege a contract that is extremely one-sided and perhaps unreasonable, but nowhere in the Complaint does Plaintiff allege that there was a lack of a meaningful choice.

In her response, Plaintiff argues that because the Complaint notes that (1) Kemp was 67 when the 2001 agreements were signed, and (2) Kemp and her husband were facing foreclosure, "Eiland knowingly took advantage of Mrs. Kemp's elderly age, lack of financial resources, and lack of real estate knowledge to create a complex and confusing real estate transaction for the purpose of unlawfully obtaining title to her home of almost four decades."  (Pl. Summ. J. Opp'n at 22).  While the Complaint does state Kemp's age, a potential foreclosure, and that Eiland used fraudulent means to obtain title, nowhere does it actually allege that the Plaintiff's age, education, intelligence, or circumstances created a lack of meaningful choice.  Merely stating Plaintiff's age and financial circumstances, with no discussion or mention of how these factors

---

*Atl. Settlement Servs., Inc.*, 640 F. Supp. 2d 1, 11 (D.D.C. 2009) aff'd sub nom. *Ali v. Tolbert*, 636 F.3d 622 (D.C. Cir. 2011).

impacted the choices available to Plaintiff, does not allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 674 (internal citation omitted).  Succumbing to a fraudulent scheme is not the same as having no choice in signing a contract.

Similarly, age and circumstances alone do not create a "gross inequality of bargaining power."  (Pl. Summ. J. Opp'n at 21).  In *Johnson v. Long Beach Mortgage Loan Trust 42001-4*, the complaint alleged that the defendant took advantage of Plaintiff's "age, limited education, limited ability to comprehend the nature of the loans, limited economic resources and lack of business sophistication."  *Id.*, 451 F. Supp. 2d at 37.  Here, Plaintiff pleads only that the consideration was inadequate for what she transferred to Eiland, that the transaction benefited Eiland, that she faced bankruptcy, and that she was 81 at the time she filed the Complaint (making her 67 when the 2001 agreements were signed).  But nowhere does Plaintiff allege any fact of limitation or disability that would raise an inference that there was unequal bargaining power, and therefore her unconscionability claim cannot stand.

However, because Kemp has stated a plausible claim for relief against Eiland and the Bank Defendants under theories of the facial deficiency of the Declaration of Trust, Eiland's unauthorized actions under the Trust, self-dealing, and fraudulent inducement, the motions to dismiss Count I are DENIED

### C.  Count II – Breach of Fiduciary Duty (Eiland)

Plaintiff alleges in the alternative that if the Declaration of Trust was indeed valid, Eiland owed her a fiduciary duty, which he subsequently breached.  (Compl. ¶ 80).  Eiland argues that, assuming that the 2001 Declaration of Trust forms the basis of the alleged fiduciary relationship, this claim fails because the Declaration of Trust does not identify Kemp as a beneficiary of the Trust.

"To make a legally cognizable claim of breach of fiduciary duty under District of Columbia law, a plaintiff 'must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of the fiduciary duties.'" *Millennium Square Residential Ass'n*, 952 F. Supp. 2d at 248 (internal citations omitted). "District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in which a special relationship of trust may properly be implied." *Id.*, citing *Teltschik v. Williams & Jensen, PLLC*, 683 F.Supp.2d 33, 46 (D.D.C.2010). As discussed in Section II(B)(iii) above, the validity of the Declaration of Trust is a fact-intensive question, and given the questions raised by the Kemps' signatures above the "___% Beneficiary" line, resolution of this issue will require, among other things, discovery into the existence and scope of any beliefs of Kemp and misrepresentations made by Eiland. Accordingly, Eiland's motion to dismiss Count II is therefore DENIED.

### D. Count III – Injunctive Relief (All Defendants)

Defendants correctly point out that a "request for injunctive relief is a remedy and does not assert any separate cause of action." (Bank Mot. at 11 (citing *Coe v. Holder*, No. 13-cv-184, 2013 WL 3070893, at *2 n.4 (D.D.C. June 18, 2013); Eiland Mot. at 33). As other courts in this District have found, "[i]njunctive relief, however, is not a freestanding cause of action, but rather—as its moniker makes clear—a form of relief to redress the other claims asserted by Plaintiff." *Base One Technologies, Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015); *see also Guttenberg v. Emery*, 41 F. Supp. 3d 61, 70 (D.D.C. 2014) ("Count II of plaintiffs' amended complaint is not a separate cause of action or claim; rather, it is a request that the Court grant a particular form of relief (an injunction) to redress the other claims plaintiffs assert.").

Accordingly, Defendants' motion to dismiss Count III is GRANTED for failure to state a claim.[13]

### E.  Count IV – Unjust Enrichment (Eiland)

"'Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.'" *Bregman v. Perles*, 747 F.3d 873, 876 (D.C.Cir.2014) (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C.2008)). When unjust enrichment occurs, "the recipient of the benefit has a duty to make restitution to the other person 'if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it.'" *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 151-52 (D.D.C. 2011) (internal quotations and citation omitted).  Evaluating an unjust enrichment claims is "heavily fact-dependent, 'for whether there has been unjust enrichment must be determined by the nature of the dealings between the recipient of the benefit and the party seeking restitution, and those dealings will necessarily vary from one case to the next.'" *Id.* (internal quotations omitted).  "The District of Columbia recognizes unjust enrichment as a species of quasi contract." *Vila v. Inter–Am. Inv., Corp.*, 570 F.3d 274, 279–80 (D.C.Cir.2009).

Kemp alleges that Eiland, through a complex scheme, "took title to Mrs. Kemps' home and retained proceeds from a mortgage that he knew he was not entitled to by law." (Compl. ¶ 88).  As a result, Kemp suffered a loss of equity in her home.  (*Id.* ¶ 89).  Additionally, as Kemp had been paying rent in the amount of $941 per month to Eiland, under the assumption that the

---

[13] However, this dismissal does not preclude the court from ultimately issuing an injunction if a future determination on the merits warrants such equitable relief.

payments were going towards her mortgage, she alleges that Eiland received over $135,000 to which he was not entitled.  (*Id*. ¶¶ 53, 91-93).

In response, Eiland first states that Kemp cannot claim unjust enrichment because he had a valid contractual relationship with her.  However, Eiland also notes that "[a] plaintiff who is a party to a contract can only seek unjust enrichment if there is a basis—e.g., "misrepresentation, duress, mistake or incapacity"—to set aside the contract as "unenforceable." (Eiland Mot. at 24) (quoting *Harrington v. Trotman* 983 A.2d 342, 346 (D.C. 2009)).  This is exactly what Plaintiff alleges—that she signed the 2001 agreements because of Eiland's fraudulent misrepresentations and inducement.  (Compl. ¶¶ 17-58, 71-73).

Eiland also argues that even if Plaintiff claims the contract is voidable under a fraudulent inducement theory, she must not only meet the pleading standards for common law fraud, but also the heightened pleading requirements for fraud under FED. R. CIV. P. 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). [14]  Relying on the Rule 9(b) standard, Eiland argues first that Kemp's cursory allegation that Eiland promised that he would save her home does not meet the standards of Rule 9(b).  Second, he argues that since, at best, the promise to save the home that Kemp relied on is an averment of a promise to perform in the future, such a promise must be accompanied by an averment that the promisor did not intend to perform this promise at the time it was made, and Kemp has pleaded no such averment.

---

[14] Under Rule 9(b), a "plaintiff must plead with sufficient particularity the following elements for a viable fraud claim: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action ... taken in reliance upon the representation."  *Malek v. Flagstar Bank* 2014 WL 4804217*5 (D.D.C., 2014).

Kemp argues that for an unjust enrichment claim, only the elements of common law fraud need be satisfied.  But even if the Rule 9(b) standard must be satisfied, Kemp states that she has met it, since Rule 9(b) should be read in harmony with FED. R. CIV. P. 8, which requires that pleadings contain only a "short and plain" statement of the claim.

The court finds that Kemp has pled facts alleging common law fraud that are not "mere vague, general, or indefinite statements."  *Bancroft Commercial, Inc. v. Goroff,* CCB-14-2796, 2014 WL 7409489 at *5 (D.Md., Dec. 31, 2014).  Plaintiff has alleged that: Eiland made a false representation by promising to help the Kemps save their home (Compl. ¶¶ 2, 20-21); this false representation was made in reference to a material fact—the ownership of the Kemps' home (*Id.*); Eiland made the agreement with knowledge of its falsity, as his subsequent actions illustrate (Complaint at ¶ 3, 51-57);[15] Eiland's actions show an intent to deceive the Kemps as to the true nature of the transaction (*Id.*); and the Kemps signed the 2001 Deed and Declaration of Trust in reliance of Eiland's misrepresentations (Complaint at ¶ 22).  Thus, Kemp has pled all of the elements of common law fraud.  *See Busby,* 932 F. Supp. 2d at 136.

Next, even assuming that Rule 9(b) is applicable, the court finds that Plaintiff has also met the enhanced pleading requirements.  "Rule 9(b) requires particularity only with respect to 'the circumstances constituting fraud.'"  *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 27 (D.D.C. 2010) (quoting FED.R.CIV.P. 9(b)).  As the D.C. Circuit has counseled, Rule 9(b) should be read in conjunction with Rule 8, and:

---

[15] *See Djourabchi v. Self*, 571 F. Supp. 2d 41, 50 (D.D.C. 2008) ("the requirement of knowledge of the falsity may be met by a showing that the statements were recklessly and positively made without knowledge of their truth. Also, a party may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. An averment will be deemed admitted when the matter is obviously one as to which a defendant has knowledge or information. . . . Intent to deceive can be implied from the fact that the defendant made an affirmative statement that he knew to be false.") (internal quotations and citations omitted).

> [c]ombining Rules 8 and 9(b), we require that 'the pleader . . . state the time, place
> and content of the false misrepresentations, the fact misrepresented and what
> was retained or given up as a consequence of the fraud.'  We also require pleaders to
> identify individuals allegedly involved in the fraud.

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co*., 389 F.3d 1251, 1256 (D.C. Cir. 2004)

(internal quotations and citations omitted).  Here, the Complaint alleges the content and facts

misrepresented (a bogus trust signed to defraud the Kemps, etc.); what was given up (title); the

time of this fraudulent activity (the agreements were signed on Feb. 8, 2001); as well as the

person making the misrepresentations (Eiland).  However, this leaves the place where the fraud

occurred possibly unanswered, so the court looks to the Complaint generally, as well as the

purpose of Rule 9(b), to decide whether the lack of a specific statement as to the exact place of

the fraud is fatal.

"Rule 9(b)'s particularity requirement serves several purposes.  It 'discourage[s] the

initiation of suits brought solely for their nuisance value, and safeguards potential defendants

from frivolous accusations of moral turpitude . . . [a]nd because 'fraud' encompasses a wide

variety of activities, the requirements of Rule 9(b) guarantee all defendants sufficient

information to allow for preparation of a response.'"  *Martin-Baker Aircraft Co,* 389 F.3d at

1256 (*citing U. S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)).  The court

finds that the Complaint meets the purpose of Rule 9(b), as it contains sufficient information to

allow Eiland to prepare a response to the allegations of fraud.  Additionally, the Court can infer

the place or places where the alleged fraudulent inducement and signing of the allegedly

fraudulent contracts occurred—the District of Columbia.  (*See* Compl., generally).  Therefore,

the Court finds that Plaintiff has met the requirements of Rule 9(b).

Moreover, Eiland's argument that for his promise to save the Kemp's home to be

fraudulent, it must be accompanied by an averment in the Complaint that he did not intend to

perform that promise when it was made is undermined by the case law upon which he relies.  In *Virginia Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, the court found that a promise may be considered actionable for fraud "if at the time of its making, the promisor had no present intention of carrying it out." *Id.*, 878 A.2d 1226, 1234 (D.C. 2005). The court then held that in order to prove whether or not the promisor intended to carry out the representation, there must be evidence that the promise was made without the intent to perform. *Id.*  That case did not consider whether a complaint must allege that the defendant did not intend to carry out his promise, only that evidence must be introduced to show intent.  Here, evidence of intent may not be produced until discovery, making dismissal at this stage inappropriate.

Finally, Kemp has alleged reasonable reliance on Eiland's conduct, to her detriment.  She alleges that in or around 2001, she and her husband fell behind in their mortgage payments, and that Eiland came to them and promised to help save their home.  (Compl. ¶¶ 20-21).  The Kemps believed Eiland when he stated this, and relied on Kemp to help them.  (*Id.* ¶ 22).  This is clearly detrimental reliance, even if the Complaint does not explicitly use that term.

For all of these reasons, Kemp has stated a claim for relief against Eiland, and the motion to dismiss Count IV is DENIED.

### F.  Count V – Slander of Title (All Defendants)

As the name suggests, slander of title "is closely related to traditional libel and slander except that the injury is not to personal reputation, but rather to the plaintiff's interest in, or the quality of, the plaintiff's property." *Whetstone Candy Co., Inc. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 n.5 (D.D.C. 2004).  Kemp alleges that because the Declaration of Trust, the 2001 Deed, the 2007 Deed, and the 2007 Deed of Trust were known or should have been known to be false and without legal effect, the Defendants slandered her title to the Property.  (*See*

24

Compl. ¶¶ 95-109).  As a result, Plaintiff lost the equity in her home and the ability to convey any interest in the Property.  (*Id.*).

Under D.C. law, a claim for slander of title requires three elements: "(1) the communication relating to the title was false and malicious; (2) damages resulted from the publication of the statements; and (3) if, special damages are sought, the underlying damages must be pled with specificity."  *Psaromatis v. English Holdings I, LLC*, 944 A.2d 472, 488 n.20 (D.C. 2008) (quoting *Herzog v. Kroonman*, 82 F.2d 859, 859 (D.C. Cir. 1936); *see also Morris v. Morris*, 110 A.3d 1273, 1275 (D.C. 2015) ("slander of title requires proof of (1) false and malicious communication relating to title of property; and (2) damages resulting from publication of communication").  The Bank Defendants and Eiland contend that Kemp has not met any of the required elements for a slander of title claim, each of which the Court will examine separately.

### i.  False and Malicious Communication

When a slander of title claim is based on the recordation of documents related to real property, D.C. and Maryland[16] courts have held that the filing of such documents in good faith is not false and malicious within the context of slander of title.  *Psaromatis*, 944 A.2d at 488 n.20 (filing a *lis pendens* notice was not a false and malicious statement because doing so was well within the filer's rights and the decision was made in good faith).[17]  One court in this District has defined this element to mean that the defendant had "knowledge or reckless disregard of the

---

[16] Because the D.C. Court of Appeals has not directly spoken on the issue, the court looks to the common law of Maryland for guidance.  *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 134 (D.D.C. 2011) ("courts applying D.C. law may look to Maryland law when there is no controlling D.C. authority directly on point").

[17] This is consistent with the law of Maryland, where the Court of Appeals, quoting Prosser, has held that liability may lie in one of three circumstances: "the defendant acts for a spite motive, and out of a desire to do harm for its own sake," "when he acts for the purpose of doing harm to the interests of the plaintiff in a manner in which he is not privileged so to interfere," and "when the defendant knows that what he says is false, regardless of whether he has an ill motive or intends to affect the plaintiff at all."  *Beane v. McMullen*, 265 Md. 585, 608-09 (1972).

falsity" of the statement.  *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 82 (D.D.C. 2004); *see also Huff v. Jennings*, 319 S.C. 142, 149-50 (Ct. App. 1995) ("wrongfully recording an unfounded claim against the property of another generally is actionable as slander of title" if the recorder "knew or should have known [it] was invalid.").[18]

Applying this rule, the Maryland Court of Appeals in *Rounds v. Md Nat'l Capital Park & Planning Comm'n*, 441 Md. 621 (2015), held that the plaintiff had stated a claim for slander of title against land surveyors alleged to have falsely omitted an easement from a survey report by alleging "knowledge of the falsity when the documents were created and submitted to the Commission." *Id.*, at 664.  By contrast, under Maryland law, persons who in "good faith assert their own legally-protected interest in the property of another" have a conditional privilege against liability.  *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1277 (D. Md. 1992).[19]  "It is not necessary that the person asserting the claim should believe in its certain or even probable validity.  It is enough if he believes in good faith that there is a substantial chance of its being sustained.  Bad faith is treated as an abuse of the privilege." *Dixon v. Process Corp.,* 416 A.2d 1295, 1299 (Ct. Sp. App. 1980) (citing Restatement (Second) of Torts § 647 comment d).

The Fourth Circuit, addressing a similar rule under West Virginia law, held that failing to conduct a title search and ignoring a notation in a survey that the surveyor did not warrant ownership of the property was "questionable" but did not rise to the level of malice necessary to

---

[18] Eiland relies on *Chen* for the proposition that a "deed cannot be 'false,' even if procured by fraud." The opinion in that case did not address the *Huff* rule that recording a deed which the recorder knows or should know is invalid is actionable as slander of title.

[19] This case addressed a claim of "injurious falsehood."  The Maryland Court of Appeals has explained that "injurious falsehood" and "slander of title" are one and the same.  *Horning v. Hardy*, 373 A.2d 1273, 1277 (Ct. Sp. App. 1977).

survive summary judgment on a slander of title claim.  *GMO Forestry Fund 3, L.P. v. Ellis*, 337

Fed. Appx. 279, 280 (4th Cir. 2009) (citing *TXO Prod. Corp. v. Alliance Resources Corp.*, 419

S.E.2d 870, 879 (W.Va. 1992)).

The elements required for a slander of title claim may well prevent Plaintiff from

recovering against the Bank Defendants at a later stage in the case, if Plaintiff cannot meet her

burden of showing knowledge of falsity, or if the Bank Defendants adduce evidence that their

reliance on Eiland's apparent authority to convey title to himself was in good faith.  *See, e.g.*,

*Chen*, 768 F. Supp. 2d at 151; *Tillery v. Borden*, No. 07-cv-1092, 2010 WL 3517015, at *12 (D.

Md. Sept. 3, 2010) (granting summary judgment in favor of defendants where plaintiff adduced

no evidence of malice or reckless disregard for the truth).  However, good faith and malice are

questions of fact normally reserved for the fact finder at trial.  *See Pitt v. District of Columbia*,

491 F.3d 494, 504 (D.C. Cir. 2007) ("The determination of malice is 'exclusively for the

factfinder'") (internal citations omitted).  Here, Plaintiff has alleged that the Bank Defendants'

actions were not taken in good faith because the face of the documents purporting to establish

Eiland's authority to convey title to the Property showed, or at least put the Bank Defendants on

inquiry notice, that Eiland had no such authority.  This suffices to state a claim at the motion to

dismiss stage.

The same is true as to Defendant Eiland.  He may ultimately succeed in demonstrating

the validity of the various documents which purport to vest him with title to the Property, such

that he recorded various documents in good faith.  However that demonstration depends on the

resolution of factual matters not properly raised or considered in a motion to dismiss.

Accordingly, the court finds that Plaintiff has pled sufficient facts as to the first element of

slander of title.

### ii. Damages

Courts are split with respect to what constitutes "special damages."  103 Am. Jur. Trials § 14 (2007).  As a general rule, a plaintiff must show "pecuniary loss suffered as a result of the slander of title."  *Id.*  For these purposes, loss of vendibility or value in the disparaged property suffices.  *Id.*  Indeed, this Circuit has stated in *dicta* that "we know of no rule of law under which plaintiff could recover exemplary damages, in [a slander of title action], without charging and proving that libel prevented the sale or leasing of the land or otherwise damaged the title." *Herzog v. Kronman*, 82 F.2d 859, 860 (D.C. Cir. 1936).  Moreover, at least one treatise has declared that "[a]ttempts to escape liability for slander of title on the ground that the instrument alleged to have been wrongfully recorded did not in fact affect plaintiff's title have been generally unsuccessful, the courts usually taking the view that any wrongful recordation which would reasonably give pause to the ordinary purchaser may be actionable."  39 A.L.R. 2d 740, *15 at § 3 (1955).  Because Kemp alleges that she has suffered a pecuniary loss—loss of equity—along with an inability to convey an interest in the property, she has sufficiently pled damages.

Having found that Plaintiff has pleaded sufficient facts on all elements of the claim, the Defendants' motion to dismiss Count V is DENIED.

### G. Defenses

Defendants also raise two defenses in their motions to dismiss—the Bank Defendants invoke the doctrine of laches against Plaintiff's quiet title claim, while all Defendants allege that the Plaintiff's tort claims are barred by applicable statutes of limitations.  Plaintiff argues that the "discovery rule" applies in this case—meaning that the statute of limitations would not begin to run until she discovered, or should have discovered, through the exercise of diligence and care, the alleged harm.

### i.   Laches

The Bank Defendants acknowledge that "laches generally involves a factual determination," but argue that laches may still "be decided on a motion to dismiss under Rule 12(b)(6) where, as here, the elements of laches appear on the face of the complaint." (Bank Mot. at 9-10). The Bank Defendants note that the Complaint alleges that Kemp was aware of the 2001 agreements, had paid Eiland monthly since 2001, and had an ongoing relationship with Eiland since 2001. Thus, they argue, Kemp should have known of any fraudulent schemes and brought suit years ago, and waiting to bring this claim until June 30, 2014—almost 14 years after signing the Declaration of Trust, and seven years after the 2007 Deed was executed—is now "patently unreasonable." (*Id*., at 10). Additionally, the Bank Defendants claim they have been prejudiced by the unreasonable delay, since the Bank Defendants acted in reliance on the 2001 and 2007 agreements to approve a $300,000 mortgage on the Property.

Kemp argues that the doctrine does not bar her claims since: (1) laches is an equitable doctrine, and the equities in this case are in her favor; (2) laches is a fact-intensive analysis which normally requires a review of facts not found in the pleadings, therefore the motion is premature; (3) the clock for laches does not begin running in a case involving fraud until the claimant actually knew, or should have known, of the fraud, and Kemp could not have reasonably discovered Eiland's fraud until 2014; and (4) a laches claim fails when a movant prejudices itself, as the Bank Defendants did by being on actual or inquiry notice of Eiland's scheme.

"Laches is the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." *Expedia, Inc. v. District of Columbia*, No. 14-CV-308, 2015 WL 4486622, at *14 (D.C. July 23, 2015) (quoting *Fed. Mktg. Co. v. Va.*

*Impression Prods. Co.*, 823 A.2d 513, 525 (D.C.2003)).  The doctrine "comes into play when two prerequisites have been met: the defendant must have been prejudiced by plaintiff's delay, and plaintiff's delay must have been unreasonable."  *Lancaster v. Fox*, 72 F. Supp. 3d 319, 326 (D.D.C. 2014) (internal citation omitted).  The burden of establishing the elements of laches is borne by the defendant.  *Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipe-Fitting Indus. of U.S. & Canada, AFL-CIO*, 370 F. Supp. 2d 118, 128 (D.D.C. 2005).  Laches is a fact-intensive defense poorly suited to a motion to dismiss. *Id*.

The Bank Defendants, noting the stage at which they raise the defense, stress that "[t]he defense of laches can be raised by a motion to dismiss if: (1) an unreasonable delay appears on the face of the pleading; (2) no sufficient excuse for delay appears or is pleaded; and (3) the motion specifically points out the defect."  (Bank Mot. at 9-10) (quoting *Arclar Co. v. Gates,* 17 F. Supp. 2d 818, 823 (S.D. Ill. 1998)).  However, the Complaint does not appear to suffer from these infirmities.  Plaintiff alleges that Eiland deceived her through his equity-stripping scheme. Assuming the facts asserted to be true, which the Court must do in assessing a motion under Rule 12(b)(6), Plaintiff would not have discovered the scheme in 2001, or even 2007.  Moreover, the Complaint alleges that Plaintiff continued making payments which she believed were going towards her mortgage until faced with eviction in 2014, the same year she filed this action in Superior Court.  (Comp. ¶¶ 54, 55).  The court therefore finds that no unreasonable delay appears on the face of the Complaint, which pleads facts sufficient to allege excuse for delay at this stage of the litigation. Therefore the Bank Defendants' motion for dismissal on the grounds of laches is DENIED.

### ii.    Statute of Limitations

Defendants also raise statute of limitations challenges to three of the five Counts.  The thrust of the Defendants' arguments is that the various alleged injuries occurred in either 2001 when the 2001 Deed and Declaration of Trust were signed, 2003 when the 2001 Deed and Declaration of Trust were recorded, or in 2007 when the 2007 Deed  and Deed of Trust were signed and recorded.  The Defendants claim that for Counts II, IV, and V, the applicable statutes of limitation are all either one or three years, and thus each claim is barred, since Plaintiff did not sue until 2014.  Plaintiff responds that she could not have learned that Eiland claimed to be the true owner of the Property until 2014, when he threatened her with eviction.  Additionally, Plaintiff argues that the court should equitably toll any applicable statutes of limitation due to the complex nature of Eiland's scheme, as well as his misrepresentations to her.  Plaintiff argues that in the alternative, she should be permitted to conduct discovery to present evidence supporting her arguments that her claims are not barred.

As Eiland correctly notes, a motion to dismiss on statute of limitations grounds should be granted "only if the complaint on its face is conclusively time barred."  *Kettey v. Saudi Ministry of Educ.*, 53 F. Supp. 3d 40, 53 (D.D.C. 2014) (citing *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 31 (D.D.C.2007); *see also Lattisaw v. D.C.*, No. 13-CV-0762 (KBJ), 2015 WL 4555391, at *7 (D.D.C. July 28, 2015) ("[A] defendant is entitled to succeed on a Rule 12(b)(6) motion to dismiss brought on statute of limitations grounds only if the facts that give rise to this affirmative defense are clear on the face of the plaintiff's complaint.").  A review of the Complaint in the light most favorable to the Plaintiff does not reveal a facial statute of limitations deficiency.

"A statute of limitations begins to run when a plaintiff has either actual or inquiry notice of (1) the existence of the alleged injury, (2) its cause in fact, and (3) some evidence of

wrongdoing.  The critical question in assessing the existence . . . of inquiry notice is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him."  *Drake v. McNair*, 993 A.2d 607, 617 (D.C. 2010) (internal citations omitted).  When an injury is not readily apparent, courts rely on the discovery rule to determine when a statute of limitations begins to run.  "The discovery rule provides that a cause of action accrues when the plaintiff has either actual notice of her cause of action, or is deemed to be on inquiry notice."  *C.B. Harris & Co., Inc. v. Wells Fargo & Co*., No. CV 14-1096 (GK), 2015 WL 4090092, at *3 (D.D.C. July 6, 2015).  The four factors a court will assess in determining whether the discovery rule applies are: "(1) the justifiable reliance of a plaintiff on the professional skills of those hired to perform their work, (2) the latency of the deficiency, (3) the balance between the plaintiff's interest in having the protection of the law and the possible prejudice to the defendant, and (4) the interest in judicial economy." *Id*.

For the first factor of the discovery rule, "the ability of an ordinary person to detect the violation is critical."  *Id*. (internal citation and quotation omitted).  Plaintiff and her husband signed the Declaration of Trust when she was 67, and allege reliance on a complex scheme. Plaintiff is now 81.  Based on the pleadings, it appears she had minimal ability to decipher the complex scheme alleged.  As to the second factor, the actions giving rise to this suit may have occurred in 2001 and 2007, but the point at which the scheme became apparent is arguably in 2014, when Eiland threatened Kemp with eviction.  *See Woodruff v. McConkey*, 524 A.2d 722, 727 (D.C. 1987) ("In discovery rule cases, the actual injury manifests itself only years after the negligent act.").  For the third factor, "a court should favor application of the discovery rule when the magnitude of the injury to the plaintiff and his interest in relief outweighs the potential prejudice to the defendant and the latter's interest in being free from stale claims."  *C.B. Harris*

*& Co.,* 2015 WL 4090092, at *4 (internal citation and quotations omitted).  Here, Plaintiff risks losing her home of nearly four decades through an alleged complex fraudulent equity-stripping scheme.  The risk of injury to Plaintiff outweighs the prejudice of continuing this litigation past the motion to dismiss stage.  Finally, as to the fourth factor, the Court does not find that judicial economy is harmed by allowing the litigation to proceed.  Thus, the discovery rule is applicable to Kemp's Complaint, which alleges that she was intentionally deceived by Eiland's complex scheme and had no notice of a cause of action until 2014.  Defendants' motion to dismiss on statute of limitations grounds is therefore DENIED.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Eiland's motion for summary judgment is DENIED.  Defendants' motions to dismiss are DENIED as to Counts I, II, IV, and V and GRANTED as to Count III.  Plaintiff's cross motion for discovery is DENIED as moot, and Plaintiff's motion for leave to amend her complaint is DENIED without prejudice.

A corresponding order will issue separately.


Dated: September 30, 2015